J-S36025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                  :         PENNSYLVANIA
          Appellee         :
       v.              :
                                    :
RAHMEL NMN WILLIAMS        :
                                    :
         Appellant       :
                                    :        No. 351 WDA 2020

Appeal from the PCRA Order Entered December 30, 2019
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0001289-2016

BEFORE: OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:               **FILED SEPTEMBER 11, 2020**

Appellant, Rahmel Nmn Williams, appeals *nunc pro tunc* from the order entered in the Fayette County Court of Common Pleas, which denied his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

This Court has previously set forth the relevant facts and some of the procedural history of this case as follows:

> On the evening of June 4, 2016, [Victim] arrived at a bar to celebrate a friend's birthday. After midnight, [Victim] left the bar with Appellant, whom she met that night. [Victim] purchased condoms at a nearby convenience store, and she and Appellant left the store in his car. [Victim] asked Appellant to drop her off on the road she resided on, but Appellant traveled in the opposite direction for approximately one mile and pulled over to a remote area of the road. [Victim] attempted to exit the car, but Appellant

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

punched her in the face and threatened to shoot her if she attempted to escape. [Victim] testified that Appellant pinned her down, mounted her and had her put a condom on him. [Victim] stated that Appellant had sex with her without her consent, bit her on her arm and shoulder, strangled her, and inserted a hard metal object into her rectum.

Appellant finally allowed [Victim] to leave when he noticed blood on the car seat. [Victim] left the car and called her boyfriend, who picked her up. Several hours later, [Victim] went to the hospital. Later that day, she underwent emergency surgery. The operating physician, Dr. Elias, testified that he performed a colostomy on [Victim], and that she had impalement injuries of the rectum and significant bruising at the lower portion of the rectum and buttocks.

Appellant testified and admitted meeting [Victim] at the bar and driving her to the gas station. He admitted having sexual intercourse with [Victim] but claimed it was consensual. He admitted hitting [Victim] in her face up to five times but said it was because he thought she stole his money.

On June 5, 2016, Appellant learned that the police were looking for him. On June 6, 2016, he set his car on fire. The police officers who responded to the fire searched the car and found the clothes Appellant wore on the night of his encounter with [Victim] as well as a lug wrench, the hard metal object that they believed he used on [Victim]. Appellant burned his leg while setting fire to the car, and he later checked into the hospital under a false name, Randall Means.

The jury found Appellant guilty of kidnapping, simple assault, reckless burning, and tampering with physical evidence but not guilty of aggravated assault, rape by forcible compulsion and involuntary deviate sexual intercourse by forcible compulsion. Following sentencing, Appellant filed a timely post-sentence motion challenging the length of his sentence, which the court denied. Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

***Commonwealth v. Williams***, No. 255 WDA 2017, 2017 WL 4180222, at *1-*2 (Pa.Super. Sept. 21, 2017) (unpublished memorandum) (internal citations to record and footnote omitted). This Court affirmed the judgment of sentence on September 21, 2017. ***See id.*** Appellant timely filed a petition for allowance of appeal with the Supreme Court, but filed a *praecipe* for discontinuance on April 20, 2018.

On July 5, 2018, Appellant timely filed his first PCRA petition *pro se*. The court appointed counsel, who filed an amended PCRA petition on February 1, 2019. In his petitions, Appellant challenged the trial court's denial of his motion for a mistrial concerning his absence from the first day of trial, and counsel's failure to raise the denial of his mistrial motion as an issue on direct appeal. Specifically, Appellant claimed a family member had dropped off clothing for Appellant to wear at trial but the prison confiscated the clothing and did not return it to him. On the day of trial, the prison provided him alternate clothes for trial but they were too small, so Appellant did not attend the first day of trial. The prison gave him a better fitting outfit the next day, so Appellant was able to attend the remainder of trial. Appellant also alleged trial counsel was ineffective for failing to conduct a thorough interview of trial witness, John Shumar, before calling him to testify for the defense.[2]

_____

[2] Mr. Shumar was an employee at the bar where Appellant and Victim met, and was working on the night in question.

The court held a PCRA hearing on August 27, 2019. Initially, the parties stipulated that, if called to testify, Felicia Hughesman would testify that she dropped off clothing for Appellant to the Fayette County Jail three days before the November term of court.[3] Appellant did not proceed to trial, however, until the January term of court. (*See* N.T. PCRA Hearing, 8/27/19, at 5).

Next, Appellant testified that he missed jury selection and the first day of testimony from two witnesses due to the prison's failure to return to him the clothing Ms. Hughesman had dropped off. Appellant said prison authorities originally delivered the clothing to him, but at some point, the prison confiscated it and did not return it. On the day of trial, Appellant admitted prison authorities gave him an outfit to wear in court, but Appellant said it was too small. The next day, the prison gave him a different set of clothing that was also too small, but because this set fit a little better, Appellant was able to wear it to court for the remainder of trial. Appellant also conceded that he spoke with the judge on the first day of trial about the clothing issue, and the judge informed him that trial would proceed in his absence if Appellant did not appear.

Regarding Mr. Shumar, Appellant insisted trial counsel failed to conduct a thorough investigation of Mr. Shumar before his testimony, because when Mr. Shumar was on the witness stand he said he did not remember anything

---

[3] Appellant claimed his trial was originally scheduled for the November term.

about the night in question due to medication that affected his memory. (***See id.*** at 7-13).

Trial counsel testified at the PCRA hearing that he represented Appellant at trial and on appeal. Counsel said he moved for a mistrial based on Appellant's absence from jury selection and the first day of testimony, but the court denied it. Counsel explained he did not raise the denial of his motion for a mistrial on appeal because he did not think it would be meritorious on appeal. Specifically, counsel said he had a prior case where a client was not present for trial because the defendant refused to get dressed; when counsel raised the issue on appeal, it was unsuccessful. Counsel indicated that he pursued four other issues on direct appeal, which he believed had the best chance of success for Appellant.

Additionally, counsel testified that he interviewed Mr. Shumar prior to his testimony and Mr. Shumar seemed to recall the events of the evening in question without any difficulty. During the interview, Mr. Shumar's recollection of the events was consistent with Mr. Shumar's prior statement to police. On the witness stand, however, Mr. Shumar said he had no recollection of the evening in question because he takes medication that affects his memory. Counsel did not recall whether he had expressly asked Mr. Shumar during the interview if he was taking any medication that would affect his memory. Counsel confirmed that Mr. Shumar did not offer any testimony that was harmful to Appellant's case, but he also did not offer any

testimony that was helpful to Appellant's case as originally expected. (***Id.*** at 16-21).

On December 30, 2019, the court denied PCRA relief. On February 21, 2020, Appellant filed a request for reinstatement of his PCRA appellate rights *nunc pro tunc*, which the court granted on February 25, 2020. Appellant timely filed a *nunc pro tunc* notice of appeal on March 4, 2020, along with a voluntary concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises three issues for our review:

> Whether [Appellant]'s constitutional rights were violated when the court proceeded to jury selection without [Appellant] being present?
>
> Whether [Appellant]'s [trial/appellate] counsel…was ineffective for failing to argue on appeal that the court erred in proceeding to jury selection without [Appellant]?
>
> Whether [trial/appellate counsel] was ineffective for failing to thoroughly interview John Shumar before calling him as a witness?

(Appellant's Brief at 3).

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. ***Commonwealth v. H. Ford***, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. ***Commonwealth***

*v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. *Commonwealth v. J. Ford*, 44 A.3d 1190 (Pa.Super. 2012). If the record supports a post-conviction court's credibility determination, it is binding on the appellate court. *Commonwealth v. Dennis*, 609 Pa. 442, 17 A.3d 297 (2011).

In his issues combined, Appellant argues he was absent from the first day of trial because the prison lost the clothing his family member had previously dropped off for him to wear, and the clothing the prison provided was too small. Appellant admits the prison provided him with a better fitting outfit the second day of trial, so Appellant wore that for the remainder of trial. By providing Appellant ill-fitting clothing on the first day of trial, Appellant claims the prison placed Appellant at a psychological and emotional disadvantage for trial. Appellant insists he could not have worn the original set of clothing provided on the first day of trial because the jurors would have thought Appellant disrespected the judicial process, or assumed he was wearing wrong sized clothing due to his incarceration. In either event, Appellant suggests that wearing the ill-fitting attire would have negatively affected his presumption of innocence. Appellant emphasizes that the court's failure to grant a mistrial deprived Appellant of a fair and impartial tribunal.

Relatedly, Appellant claims trial/appellate counsel was ineffective for failing to raise the court's denial of his motion for a mistrial on direct appeal.

Appellant acknowledges counsel's testimony at the PCRA hearing that he had previously lost on appeal a similar case, but Appellant contends the facts of each case are different and the outcome could have been different under his facts. Appellant further claims counsel was ineffective for failing to conduct a thorough interview of Mr. Shumar before calling him to testify. Appellant claims Mr. Shumar was supposed to discredit some of Victim's testimony, but when on the witness stand, Mr. Shumar surprisingly stated he had no recollection of the evening at issue because he takes medication that affects his memory. Appellant submits counsel had no reasonable basis for failing to ask Mr. Shumar during the interview whether he took any medication that might impair his memory. Appellant maintains he suffered prejudice due to counsel's failure because Appellant could have called a different employee of the bar to testify on Appellant's behalf, whose memory was intact. Appellant concludes counsel was ineffective, and this Court must vacate the order denying PCRA relief and remand for a new trial. We disagree.

The law presumes counsel has rendered effective assistance. **_Commonwealth v. Gonzalez_**, 858 A.2d 1219 (Pa.Super. 2004), _appeal denied_, 582 Pa. 695, 871 A.2d 189 (2005). In general, to prevail on a claim of ineffective assistance of counsel, a petitioner must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken

place. **Commonwealth v. Turetsky**, 925 A.2d 876 (Pa.Super. 2007), *appeal denied*, 596 Pa. 707, 940 A.2d 365 (2007). The petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable strategic basis for his action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. **Id.** at 880. "The petitioner bears the burden of proving all three prongs of the test." **Id.**

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…." **Commonwealth v. Pierce**, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." **Commonwealth v. Poplawski**, 852 A.2d 323, 327 (Pa.Super. 2004).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective." **Pierce, supra** at 524, 645 A.2d at 194-95 (internal citations omitted). Importantly:

> [W]e do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. We will conclude that counsel's chosen strategy lacked a reasonable basis only if [a]ppellant proves that an alternative not chosen offered a potential for success

substantially greater than the course actually pursued.

***Commonwealth v. Chmiel***, 612 Pa. 333, 361-62, 30 A.3d 1111, 1127 (2011) (internal citations and quotation marks omitted).

> Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [A] "criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

***Commonwealth v. Chambers***, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (some internal citations and quotation marks omitted).

Pursuant to Article 1, § 9 of the Pennsylvania Constitution, and the Sixth Amendment of the federal constitution that applies to the states via the Fourteenth Amendment due process clause, defendants have the right to be present during their criminal trial. ***Commonwealth v. Wilson***, 551 Pa. 593, 598, 712 A.2d 735, 737 (1998). ***See also*** Pa.R.Crim.P. 602(A) (stating: "The defendant shall be present at every stage of trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence"). While a defendant has the right to be present at trial, that right is not absolute, and can be waived if a non-capital defendant either expressly or implicitly does so. ***Wilson, supra***. "[A]bsenting oneself from…trial does not violate a person's jury trial rights." ***Commonwealth v. Kelly***, 78 A.3d 1136, 1143 (Pa.Super. 2013), *appeal denied*, 625 Pa. 648, 91 A.3d 161 (2014). Under

Rule 602(A), "[t]he defendant's absence without cause at the time scheduled for the start of trial or during trial shall not preclude proceeding with the trial[.]" Pa.R.Crim.P. 602(A). In determining whether cause exists, we generally examine whether a defendant was aware of the charges, the trial date, or was absent involuntarily. *Kelly, supra*.

Additionally:

> Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary. Counsel's unreasonable failure to prepare for trial is an abdication of the minimum performance required of defense counsel. The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance. …

*Commonwealth v. Johnson*, 600 Pa. 329, 350-51, 966 A.2d 523, 535-36 (2009) (some internal citations omitted).

Instantly, the PCRA court addressed Appellant's claims as follows:

> Appellant testified during the Hearing on his PCRA Petition that on the date of trial, he was provided with clothes from the jail. Appellant stated that these clothes did not fit him properly. However, Appellant testified that he was brought to the Courthouse on the trial date where he spoke with the court. Appellant testified that clothing, although not fitting perfectly, was made available to him and that the [c]ourt informed him that the trial would proceed in his absence if he did not wish to attend. This conversation between the [c]ourt and Appellant that occurred outside the presence of the jury and in another courtroom made it clear to the [c]ourt that Appellant was attempting to delay and/or disrupt the proceedings. Therefore, the [c]ourt deemed his appearance for the commencement of trial to be waived. When it was evident that the court would not permit any

further delays or disruptions to happen[,] Appellant attended trial the next day. The [c]ourt notes that the verdict reveals the jury did not in any way hold the brief absence from trial against Appellant as they found him not guilty of the most serious offenses charged of aggravated assault, rape and involuntary deviate sexual intercourse.

\*    \*    \*

[Trial/appellate counsel] testified that he made a Motion for Mistrial on the clothing issue. [Counsel] further testified that he did not raise the issue of clothing on Appeal because he had a very similar issue on Appeal in the past which had been denied. In his experience and professional judgment, the issue would have been without merit and efforts were best focused on other issues which may have been more meritorious for [Appellant].

Appellant [also] claims that [counsel] was ineffective because he failed to interview Mr. John Shumar prior to calling him as a witness. However, [counsel] testified that he did interview Mr. Shumar prior to calling him as a witness. This interview took place in the Office of the Public Defender during the lunch hour prior to his testimony. The delay in conducting the interview is attributed to difficulty in locating Mr. Shumar. Once Mr. Shumar began to testify, his testimony failed to match what he had previously told [counsel]. Mr. Shumar testified that he couldn't remember the night in question. While unfortunate, this lack of consistent testimony on the part of the witness cannot be imputed to [counsel]. The witness told him something different prior to testifying.

The [c]ourt finds the testimony of [counsel] to be credible and credits his testimony over the testimony of Appellant. Counsel is presumed to be effective unless Appellant proves otherwise. This [c]ourt finds that Appellant has failed to meet his burden by a preponderance of the evidence to show that he is entitled to relief and his appeal of the denial of his [PCRA] Petition is without merit.

(PCRA Court Opinion, filed April 7, 2020, at 3-5) (internal citations omitted).

The record supports the court's analysis. *See **H. Ford, supra***; ***Boyd, supra***.

- 12 -

Regarding Appellant's first ineffectiveness issue,[4] Appellant's claim lacks arguable merit where Appellant implicitly waived his right to be present on the first day of trial by choosing not to attend even though the prison had provided him clothing and the court had informed him that trial would proceed in his absence if Appellant failed to attend. *See Wilson, supra*; *Kelly, supra*. *See also Pierce, supra*. Further, Appellant failed to show counsel's actions lacked a reasonable basis where the court credited counsel's testimony that he did not raise the denial of Appellant's motion for a mistrial on appeal because counsel had unsuccessfully litigated a similar claim in the past, so counsel chose to raise other issues counsel believed had a better chance of success instead. *See Chmiel, supra*; *Pierce, supra*.

With respect to counsel's alleged failure to conduct a thorough interview of Mr. Shumar, Appellant also failed to satisfy the arguable merit prong on this ineffectiveness claim, because counsel interviewed Mr. Shumar and Mr. Shumar's statements during the interview were consistent with his prior statements to police. As well, Mr. Shumar did not appear to counsel to have any memory issues during the interview. Thus, the record confirms counsel

_____

[4] To the extent Appellant raises his claim concerning the denial of his motion for a mistrial outside of the context of counsel's ineffectiveness, that claim is waived for failure to have raised it on direct appeal. *See* 42 Pa.C.S.A. § 9544(b) (explaining that issue is waived under PCRA if petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in prior state post-conviction proceeding).

performed an adequate interview, and counsel was not responsible for Mr. Shumar's memory lapse at trial.[5]  ***See Johnson supra***; ***Pierce, supra***.  The record supports the court's decision to deny PCRA relief on the grounds alleged and we see no reason to disrupt the court's credibility determinations in favor of trial/appellate counsel and against Appellant.  ***See Dennis, supra***; ***H. Ford, supra***; ***Boyd, supra***.  Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2020

---

[5] Although Appellant claims he could have called another witness whose memory was not impaired, Appellant does not identify any particular witness who would have testified in Appellant's defense.